# In the United States Court of Federal Claims

Nos. 16-49C, 16-51C, 16-53C, 16-54C,
16-55C, 16-56C, 16-57C, 16-58C,
16-59C, 16-60C, 16-61C, 16-62C,
16-63C, 16-64C, 16-65C, 16-66C,
16-392C
(Filed: April 6, 2018)
FOR PUBLICATION

***************************************

| | |
|---|---|
| **BRIAN R. BAUDE et al.,** | * Motion to Dismiss; Motion for Judgment |
| | * on the Administrative Record; RCFC 52.1; |
| | * RCFC 12(b)(1); RCFC 12(b)(6); Subject |
| Plaintiffs, | * Matter Jurisdiction; Failure to State a |
| | * Claim; 10 U.S.C. § 637; 10 U.S.C. § 632; |
| v. | * 10 U.S.C. § 1558; 37 U.S.C. § 204; |
| | * 10 U.S.C. § 638a; 10 U.S.C. § 691; |
| **THE UNITED STATES,** | * 31 U.S.C. § 1341; AFI 36-2501; |
| | * DoDI 1320.11; DoDI 1320.08; AFBCMR; |
| Defendant. | * Justiciability; Exhaustion; Special Board; |
| | * Selective Continuation Board |

***************************************

*Greg T. Rinckey*, Partner, *Cheri Cannon*, Managing Partner, Tully Rinckey, PLLC, Washington, DC, for Plaintiffs.

*William J. Grimaldi*, Senior Trial Counsel, *Chad A. Readler*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for Defendant; of counsel, *Annie W. Morgan,* Litigation Attorney, General Litigation Division, Joint Base Andrews, MD.

## OPINION AND ORDER

This consolidated case involves United States Air Force Majors with over fourteen years of service who went before the Air Force Central Selection Board (hereinafter "Promotion Board") on March 7, 2011, and were passed over for a promotion for the second time. These Plaintiffs also went before the Selective Continuation Board on March 21, 2011, and were not selected for continuation to retirement eligibility. After being non-selected, these Plaintiffs were then separated from the Air Force. The Plaintiffs appealed to the Air Force Board of Correction of Military Records ("AFBCMR"), but the AFBCMR upheld the decision of the Selective Continuation Board. Alleging that their separation was improper, the officers seek injunctive relief, restoration to active duty, back-pay, reasonable attorney's fees, and any other relief the Court deems just and proper.

1

On January 12, 2016, sixteen of these Plaintiffs filed Military Pay Act claims in this Court.  Major Brian R. Baude, No. 16-49C, was the first to file his complaint and his case was assigned to Senior Judge Bruggink.  On March 3, 2016, pursuant to Rule 42(a) of the United States Court of Federal Claims ("RCFC"), the Defendant moved to consolidate the fifteen other cases as they involved the same common questions of fact and law.  On March 7, 2016, Senior Judge Bruggink granted this motion.  Later on March 28, 2016, a seventeenth Plaintiff filed a complaint in this Court and it was consolidated with the others on April 6, 2016.

On April 27, 2017, Senior Judge Bruggink issued a scheduling order directing Defendant to file the Administrative Record ("AR") on or before May 8, 2017, and Plaintiffs to file any motion to supplement the AR on or before June 19, 2017.  However, this case was reassigned to Judge Damich on May 1, 2017, pursuant to RCFC 40.1(c).  Following Senior Judge Bruggink's scheduling order, both Defendant and Plaintiffs timely filed their respective motions.  This Court issued its Order and Opinion denying Plaintiffs' motion to supplement the administrative record on August 18, 2017.

On October 27, 2017, the Plaintiffs filed their motion for judgment on the administrative record.  On November 17, 2017, Defendant filed its motion to dismiss Plaintiffs' complaint pursuant to RCFC 12(b)(1) and 12(b)(6), or, in the alternative, for judgment on the administrative record.  Briefing proceeded accordingly and concluded on January 5, 2018.

For the following reasons, the Court **GRANTS** Defendant's motion for judgment on the administrative record, **DENIES** Defendant's motion to dismiss, and **DENIES** Plaintiffs' cross-motion for judgment on the administrative record.

## I.      Statement of Facts

### A.   *Secretary of the Air Force's Alteration of the Eligibility for Retirement and Plaintiffs' Eventual Separation*

On December 6, 2010, the Secretary of the Air Force ("SecAF") notified the Undersecretary for Defense for Personnel and Readiness ("USD (P&R)") that he intended normally to select for continuation twice-passed-over Majors who would qualify for retirement only if they were within five years of military retirement.[1]  Def.'s Mot. at 5-6.  Specifically, SecAF narrowed from six years to five years to retirement the eligibility for continuation to retirement of twice-passed-over Majors.  AR178.  In essence, the eligible officers needed to have one more year of service under this policy in order normally to be continued.

---

[1] SecAF ordered the Air Force Selective Continuation Board to retain twice-passed over Majors within five years of retirement, as well as officers with critical career fields.  Def.'s Mot. at 6.  The Selective Continuation Board could designate officers outside the instructed five years, but only if the board determined that retention is in the best interest of the Air Force.  Def.'s Mot. at 6.

In February 2011, members of the Air Force received an email from the Air Force Chief of Staff "warning that the selective continuation that year may be limited."[2] On March 21, 2011 the Selective Continuation Board met to consider twice-passed-over Majors for retention, including these Plaintiffs. At the time of this meeting, the Plaintiffs had fourteen years of service, and were within the prior standard of six years within retirement, but not the narrowed standard of five years. In total, the Selective Continuation Board declined to recommend retention of 157 candidates out of 245 total individuals it considered. These Plaintiffs were in the pool of non-selected applicants. Def.'s Mot. at 6. On April 14, 2011, and May 31, 2011, SecAF approved the recommendations of the Selective Continuation Board, and Plaintiffs were ultimately discharged on November 30, 2011. Def.'s Mot. at 6; AR004.

### B. The First Fifteen Plaintiffs' Initial Petitions

In August and September of 2013, fifteen of these Plaintiffs petitioned the AFBCMR for relief.[3] The fifteen Plaintiffs petitioned the AFBCMR to convene a special board to (1) reconsider their non-continuation, (2) reinstate them into active duty, or (3) grant them pro-rated retirement under the Temporary Early Retirement Authority ("TERA").[4] Pls.' Mot. at 4; AR017, 019. In January and February of 2015, the AFBCMR issued decisions denying the fifteen Plaintiffs' corrections but did not explicitly address their requests for special boards. *See* AR001-016.

### C. The Plaintiffs' Complaints and Subsequent Remand to AFBCMR

Approximately one year later, the original fifteen officers, joined by two more (Plaintiffs Perron and Shaffer),[5] filed a complaint in this Court. On August 29, 2016,

---

[2] Selective continuation is a process where service members who have been twice non-selected for a promotion are evaluated and either selected to continue in service or separated. A selective continuation board is the body that reviews the candidates and recommends continuation or separation. Pls.' Mot. at 3 n.3.

[3] The Plaintiffs that filed the initial petitions with the AFBCMR in 2013 are: Brian R. Baude, Case No. 16-49C; Joanna L. Mitchell, Case No. 16-51C; Jason D. Engle, Case No. 16-53C; Randall E. Feltner, Case No. 16-54C; Jason K. Humphrey, Case No. 16-55C; Jeffrey W. Kerneklian, Case No. 16-56C; David C. Kirkman, Case No. 16-57C; Kenji Ligon, Case No. 16-58C; Christopher T. Prott, Case No. 16-61C; Robert B. Russell, Case No. 16-62C; Steven P. Schreffler, Case No. 16-63C; Eric Suciu, Case No. 16-64C; James A. Trevino, Case No. 16-65C; and Joseph Williams, Jr., Case No. 16-66C.

[4] Plaintiffs do not continue their TERA challenges in their motion for judgment on the administrative record.

[5] Plaintiff Richard Perron, Case No. 16-60C, was consolidated with the other fifteen complaints listed *supra* note 3 by Judge Bruggink on March 7, 2016. And as previously noted, Plaintiff Kirk M. Shaffer, Case No. 16-392C, did not file his complaint in this Court until March 28, 2016 and was not consolidated with this lead case until April 6, 2016.

because the AFBCMR did not explicitly address the original fifteen Plaintiffs' requests for special boards, Judge Bruggink granted Defendant's request to remand this matter to the AFBCMR for its consideration.  Also, because Plaintiffs Perron and Shaffer did not first petition the AFBCMR to convene a special board before filing their complaints, the Court ordered Perron and Shaffer to do so within thirty days of the August 29, 2016 Order.

On March 31, 2017, the Court received the decision from the AFBCMR for the first fifteen Plaintiffs which concluded that there was no need to convene a special board, and the Plaintiffs, "failed to sustain [their] burden of proof that [they] ha[ve] been the victim of an error or injustice."  AR231.

The AFBCMR issued separate decisions for Perron and Shaffer. On August 28, 2017, the AFBCMR found that Perron and Shaffer's petitions for a special board were untimely under the three-year limitation in 10 U.S.C. § 1558.  Also, the AFBCMR found the petitions untimely because they were filed nearly three months late of Senior Judge Bruggink's thirty-day window.  Instead of being filed by the end of September in accordance with Senior Judge Bruggink's Order, the petitions were filed in December 2016. DA108.[6]  However, even finding the petitions untimely, the AFBCMR decided the case on the merits and found that there was "no error or injustice" in the non-continuation of Perron and Shaffer, and explained that they simply "repeated the arguments of [their] co-plaintiffs[.]"  DA107.

## II.     Standards of Review

### A.  RCFC 12(b)(1) – Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to the Tucker Act, this Court has the power to "render any judgment upon any claim against the United States founded upon either the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States  . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act expressly waives the sovereign immunity of the United States, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976).  Rather, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).

When a court's subject matter jurisdiction is challenged, the plaintiff bears the burden of establishing subject matter jurisdiction by preponderant evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).  Furthermore, the Court considers the facts alleged in the complaint to be true. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).  However, if at any point the court finds that it lacks subject matter jurisdiction, it must dismiss the action. RCFC 12(h)(3).

---

[6] DA_ refers to the appendix attached to Defendant's motion for judgment on the administrative record.

### B.  RCFC 12(b)(6) – Motion to Dismiss for Failure to State a Claim

"Even where subject matter jurisdiction over a claim has been established, the claim may be subject to dismissal for 'failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(6)." *Zulueta v. United States*, 2013 U.S. Claims LEXIS 24, at *11 (Fed. Cl. Jan. 29, 2013).  The allegations in the complaint are construed favorably to the pleader, but the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.*

### C.  RCFC 52.1(c) – Judgment on the Administrative Record

A motion for judgment upon the administrative record is governed by RCFC 52.1. In considering such motions, a court asks "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).  A reviewing court must make fact findings where necessary.  *Bannum*, 404 F.3d at 1356.  As such, the resolution of cross-motions brought pursuant to RCFC 52.1 is akin to an expedited trial on the paper record. *Id*.

When reviewing military personnel decisions, there is a deferential standard.  This Court "will not disturb the decision of a corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005).  Going further, this Court must not "substitute [its] judgment for the Air Force Board for Correction of Military Records' when reasonable minds could reach differing conclusions." *Sanders v. United States*, 219 Ct. Cl. 285, 302 (1979).  The plaintiff bears the burden to overcome the strong presumption of validity relating to official military acts, including those of a military corrections board.  *Biddle v. United States*, 186 Ct. Cl. 87, 104 (1968).

## III.  Discussion

### A.  Statutory Framework of the Up-Or-Out System

Congress created an "up-or-out system," which requires service members to undergo competitive reviews for promotion and limits their permitted years of service through separation or, if eligible, retirement, based upon the competitive reviews and needs of the service branch.  H.R. Rep. No. 96-1462, at 8, 19 (1980).  The appropriate Service Secretary has the discretion to manage both the number of officers and represented skill sets available.  10 U.S.C. § 8013(b).

Under this statutory framework, the appropriate Service Secretary may convene a selective continuation board to recommend the continued service of majors twice-passed-

over for a promotion who would otherwise be subject to removal. *See* 10 U.S.C. § 637(a). The Secretaries are required, only under specific conditions described in the statute, to retain active duty majors with eighteen years of service. 10 U.S.C. §§ 632(a)(3); 637(a)(5). For majors twice-passed-over having less than eighteen years of service time, Congress delegated the continuation decision to the Service Secretaries. 10 U.S.C § 637(c); 10 U.S.C. § 632(a). Because these Plaintiffs had less than 18 years of service, their continuation decision was in the hands of SecAF.

Congress also delegated the authority to promulgate regulations for administration of this continuation authority to the Secretary of Defense. 10 U.S.C § 637(e). Pursuant to this authority, the Secretary of Defense issued Department of Defense Instruction (DoDI) 1320.08, *Continuation of Commissioned Officers on Active Duty and on the Reserve Active Status List* (March 14, 2007), which delegated the continuation decision to the Service Secretaries. With regard to twice-passed-over majors, DoDI 1320.08 stated that they "shall normally" be selected for continuation if they qualified for retirement "within 6 years of the date of continuation." AR041.

DoDI 1320.08 also explained that the appropriate Secretary could decide not to continue an officer "in unusual circumstances," such as "when an officer's official personnel record contains derogatory information." AR041. In the event the Secretary wished to discontinue large pools of majors (i.e., narrow the field of eligible officers), the appropriate Secretary must notify the USD(P&R) of this intent. AR041.

## B. *Judicial Review of Non-Retention Decisions*

Under 10 U.S.C § 632(a), "each officer of the . . . Air Force . . . who holds the grade of major, who has failed of selection for promotion to the next higher grade for the second time and whose name is not on a list of officers recommended for promotion to the next higher grade shall" be discharged.

If a service member has been discharged under section 632(a), he or she may seek both administrative and judicial review of the non-retention decisions under 10 U.S.C. § 1558. Pursuant to 10 U.S.C. § 1558(a), if a service member is not retained by a selective continuation board, the appropriate Service Secretary may "correct a person's military records in accordance with a recommendation made by a special board." A service member must first exhaust administrative remedies by requesting a special board to correct the military record before seeking judicial review. 10 U.S.C. § 1558(f)(1). *See also Santana v. United States*, 127 Fed. Cl. 51, 61 (2016) ("The court finds that until the § 1558 process is complete, the court lacks jurisdiction to review the [selective] continuation board's decisions."). Specifically, under Air Force Instruction ("AFI") 36-2501, which implements section 1558, service members wanting correction by a special board "ordinarily must apply for such consideration within three years after he/she discovered, or with due diligence should have discovered, the asserted defect in the original board. [SecAF] . . . may excuse late application when it is in the interest of justice to do so." AFI 36-2501, Att. 13, ¶ A13.7.

6

If the individual requests a special board, and the service Secretary denies that request, section 1558 allows a "court of the United States" to review the denial.  10 U.S.C. § 1558(f)(2)(A).  Upon judicial review, the Secretary's decision may be set aside if it is found to be arbitrary or capricious, not based on substantial evidence, a result of material error of fact or material administrative error, or otherwise contrary to law.  10 U.S.C. § 1558(f)(2)(i)-(iv).  If a court sets aside the Secretary's denial of a special board, the court may remand back to the Secretary to convene one.  10 U.S.C. § 1558(f)(2)(B).

> C.  *Motion to Dismiss for Lack of Jurisdiction: Even Though Section 1558 Is Not Money Mandating And Only Awards Equitable Relief—A Remand—Plaintiffs' Claims Fall Within The Purview Of The Military Pay Act And, Therefore, This Court Has Jurisdiction.*

In its motion to dismiss, Defendant argues that this Court lacks jurisdiction under RCFC 12(b)(1) because 10 U.S.C. § 1558 does not mandate the payment of money, as it only grants authority to review non-retention decisions of selective continuation boards.  In other words, Defendant claims that because section 1558 limits the Court's jurisdiction to equitable relief and not the payment of money, this Court may not entertain Plaintiffs' claims since they are not based on a money mandating statute.

However, Defendant mischaracterizes Plaintiffs' requests for relief.  In their complaints, Plaintiffs state:

> The statutory bases for invoking jurisdiction are 10 U.S.C. §§ 611-647, 10 U.S.C. § 1552, and 10 U.S.C. § 1558, which entitles a service member to basic pay under 37 U.S.C. §§ 201-212.  These statutes are money-mandating provisions.  This complaint alleges money damages in excess of $10,000.

Compl. at 2.

> In their Reply, Plaintiffs expanded on this premise:

> The Plaintiffs' primary focus from the beginning of this action has been to recover the lost military pay and retirement benefits and pay that Plaintiffs were denied as a result of the SecAF's illegal action.  The Plaintiffs seek review of the *full AFBCMR determination*, not just the portion of the AFBCMR's determination that denied the Plaintiffs' entitlement to a special board.

Pls.' Resp. at 3 (emphasis added).

Therefore, while section 1558 only allows a court to grant equitable relief, looking at the complaint as a whole, the Court finds that the substantive crux of Plaintiffs' complaint is a military pay claim resulting from their allegedly wrongful non-retention because of the AFBCMR's denial of their requests for special boards.  "It is

well established that the Military Pay Act, 37 U.S.C. § 204, is a separate, money-mandating source of law that provides the Court with jurisdiction." *Crumley v. United States*, 133 Fed. Cl. 607, 612 (2017) (citing *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc)).  As such, Defendant's focus on the limited relief allowable by 10 U.S.C. § 1558 is myopic.  Ultimately, Plaintiffs' cause of action is based on a money mandating statute and any equitable relief is only ancillary to their money damages claim.

Defendant then argues that the Military Pay Act is only implicated "once a special board convenes" and either when "a plaintiff's military status is restored following the special board's recommendation that the plaintiff not be involuntary discharged," or when "this Court reviews a special board's recommendation not to restore a plaintiff's military status as arbitrary and capricious."  Def.'s Reply at 3.  Defendant concludes that "because a special board has not convened, the present claims do not implicate the Military Pay Act, and this Court does not possess jurisdiction to entertain the claims." Def.'s Reply at 3.

This argument is equally unavailing.  Under the Tucker Act, this Court has the ability to award equitable relief, such as the relief subject to section 1558, when such award is "incident of and collateral to" an award of money damages and would "provide an entire remedy and to complete the relief afforded by the judgment."  28 U.S.C. § 1491(a)(2).  It is imperative, and Defendant concedes this notion, that the non-monetary relief is "tied and subordinate to a money judgment."  *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975).  *See also Mercier v. United States*, 114 Fed. Cl. 795, 800 (2014) (discussing the limited grant of authority to issue equitable orders for the purpose of "complet[ing] the relief" allowable by the judgment under the applicable money mandating statute).

Here, as explained *supra*, Plaintiffs' suit is primarily one for money damages—lost military pay.  Although Plaintiffs request that the Court issue an Order directing SecAF to convene a special board to review their separation, this equitable relief is "collateral to" the principle relief of granting Plaintiffs their back pay.  And as the Federal Circuit has held on numerous occasions, "[a] party may not avoid the [Court of Federal Claims'] jurisdiction by framing an action against the federal government that appears to seek only equitable relief when the party's real effort is to obtain damages in excess of $ 10,000."  *Kanemoto v. Reno*, 41 F.3d 641, 646 (Fed. Cir. 1994).  Therefore, Defendant cannot avoid this Court's jurisdiction.

Since Plaintiffs' claims fall under the umbrella of 37 U.S.C. § 204 and, as such, is based upon a separate money mandating statute, this Court has jurisdiction to hear Plaintiffs' claim for lost active duty pay and retirement benefits, as well as issue any collateral equitable relief regarding SecAF's denial to convene a special board.

Therefore, Defendant's motion to dismiss for lack of jurisdiction is **DENIED**.

### D. Failure to State a Claim

### 1. Justiciability

In its motion to dismiss, Defendant also argues that many of Plaintiffs' claims are nonjusticiable. This is not the first time justiciability has been addressed in this case. On August 18, 2017, the Court issued its Order on Plaintiffs' motion to supplement the administrative record with "supplementary details, updates, and evidence not before the AFBCMR to support their claims that Defendant erred either because its findings were not supported by the evidence and/or it acted in bad faith when denying the officers continuation." *See* Dkt. No. 41 at 3. In that Order, the Court explicitly barred these "details" because they related to a nonjusticiable matter. The Court explained that:

> There is a significant difference between alleging a procedural violation of military personnel decisions (where the military is alleged to have violated a statute or applicable regulation), and claims that military decisions are simply wrong on the merits. Procedural violations of military decisions are generally viewed to be justiciable, *see Anderson v. United States*, 111 Fed. Cl. 572, 582 (2013); while claims that military decisions to be substantively wrong are nonjusticiable and "unquestionably beyond the competence of the judiciary to review". *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995) . . . Plaintiffs' nine requested categories of "details" are directed to the merits of the Air Force's decision as to whether or not it *should* have reduced its end-strength and *how* it should have reduced its end-strength. As these requests reflect on the substantive merits of SecAF's decision to narrow the eligibility criteria, their omission will not preclude effective judicial review on the question at hand.

Dkt. No. 41 at 6 (emphasis in original).

Now, Defendant brings up justiciability again in the context of its motion to dismiss. Specifically, Defendant highlights four of the Plaintiffs' points and argues that they are substantive and nonjusticiable:

1. Plaintiffs contend that the AFBCMR erred in concluding that the Secretary had a reasonable basis to reduce Air Force end strength, asserting no requirement mandated such a reduction. Pls.' MJAR 29; *see also Allphin*, 758 F.3d at 1341.
2. Plaintiffs challenge *how* the Secretary reduced manpower by [challenging] the content of the Secretary's Department of Defense Instruction (DoDI) 1320.08 notification to the Undersecretary of Defense (Personnel and Readiness) (USD(P&R)). Pls.' MJAR 23-24.
3. Plaintiffs challenge both *how* and whether the Secretary *should have* reduced manpower by contending that the Secretary erred when finding that "unusual circumstances" existed under in DoDI 1320.08, ¶ 6.3. Pls.' MJAR 19.

4. Plaintiffs challenge *how* the Secretary managed the Air Force workforce by alleging the use of an improper board under 10 U.S.C. § 638a.

Def.'s Reply at 5 (emphasis in original). In Defendant's view, challenging these four items are all substantive challenges and nonjusticiable.[7] However, Defendant is not persuasive except as to point one.

It is not the role of the courts to question the wisdom of a military policy decision that has been made in accordance with law, but the Plaintiffs are not arguing on the higher level of the wisdom of the policy change but rather on the lower level of whether the change was made in accordance with law. Plaintiffs' overarching argument is that "SecAF exceeded his authority by convening a [selective] continuation board in FY 2011 to select majors for involuntary discharge to reduce the force under 10 U.S.C. § 637." Pls.' Resp. at 9. Specifically, Plaintiffs allege that SecAF exceeded his authority and "violated 10 U.S.C. § 637 and the implementing regulation, DoDI 1320.08 [,] 10 U.S.C. § 638(a) and a related regulation, DoDI 1320.11 § 691, and AFI 36-2501" when he modified the selective continuation window of protection from six years within retirement to five years. Pls.' Resp. at 9. This is exactly the type of procedural violation the Court can entertain; it requires an analysis of the applicable law and regulations and determination as to whether SecAF violated those laws or regulations. Simply stated, the scope of the Court's inquiry is whether SecAF acted in accordance with the applicable federal statutes and Department of Defense regulations.

### i. Reasonableness of SecAF's Decision to Reduce the Force

Regarding the first point, Plaintiffs argue that there was no need to reduce the force because "there was no requirement to meet the congressionally mandated end strength number." Pls.'s Mot. at 29. Thus, none of this force reduction should have ever taken place. Put another way, there was no mandate that required SecAF to reduce the number of officers in the Air Force.

Defendant maintains that evaluating whether SecAF was required to reduce officers is a nonjusticiable issue. In the alternative, Defendant suggests that the lack of a congressional mandate is irrelevant since SecAF has the inherent discretion to manage the manpower of the Air Force. Def.'s Mot. at 20.

Judicial review into the reasonableness of SecAF's decision to reduce the force is a nonjusticiable issue as it challenges the merits of SecAF's policy decision. As discussed in the Court's previous Order, issues regarding whether the Air Force should have reduced its officer levels is nonjusticiable.

---

[7] Of the four items, Plaintiffs only responded to the third and fourth, and thus waived any rebuttal to the first two items. However, this fact does not preclude the Court from disagreeing with Defendant's position.

*ii. Challenging the Content of the Notice to USD(P&R)*

Plaintiffs contend that SecAF's notification to USD(P&R) was "misleading" because it did not fully explain the extent of SecAF's proposed actions.  Pls.' Mot. at 23. Specifically, Plaintiffs allege that SecAF must have disclosed the way he was going to implement the non-continuation, not merely give notice of his intent to non-continue officers.  Plaintiffs also argue that SecAF was required to seek approval for his plan to change the continuation standards from USD(P&R).

Defendant claims that this challenge to the notice is nonjusticiable because it addresses "how" SecAF managed the Air Force's manpower.  In the alternative, Defendant argues that DoDI 1320.08 only required the type of notification sent to USD(P&R) in this circumstance, not specific details on the manner in which the non-continuation will happen.

Although, in general, "how" the SecAF might reduce the manpower of the Air Force is a matter of policy and therefore non-justiciable, here, DoDI 1320.08 requires SecAF to notify USD(P&R) of his intent to narrow the continuation pool, thus limiting "how" the SecAF may reduce the Air Force's manpower through non-continuation. AR041.  This is an alleged procedural violation: did SecAF notify USD(P&R) of his intent not to continue larger pools of officers who would otherwise qualify for retirement?  Further, challenging whether SecAF was required to seek approval for his plan is also a procedural challenge and justiciable.[8]

*iii. Unusual Circumstances*

While Plaintiffs contend that SecAF erred when finding that "unusual circumstances" existed under DoDI 1320.08, Defendant argues that this challenge is nonjusticiable because it questions "how" SecAF reduced the manpower.  Specifically, Defendant proffers that this challenge questions SecAF's determination that "unusual circumstances" existed to warrant non-continuation of majors.

As explained *supra*, DoDI 1320.08, ¶ 6.3 provides that the appropriate Secretary may decide not to continue an officer "in unusual circumstances," such as "when an officer's official personnel record contains derogatory information."  AR041.  Thus, challenging whether unusual circumstances existed is justiciable; its determination requires an analysis of this provision and application of the facts to it.

---

[8] While determining whether there was a required approval process is an alleged procedural violation and justiciable, this Court will not endeavor to discuss the "merits" of the process proposed—was the policy to non-continue this category of majors a good one?

*iv.   Use of Improper Board*

Plaintiffs allege that SecAF used an improper board to discharge Plaintiffs and should have used 10 U.S.C. § 638a and § 691 instead.  Defendant alleges that Plaintiffs' argument challenges "how" SecAF managed the Air Force workforce by use of an improper board.

Despite Defendant's contentions, determining whether sections 638a and 691 are relevant or irrelevant in this scenario is justiciable.  It is this Court's job to determine whether the AFBCMR properly concluded that SecAF acted within his authority when narrowing the continuation standards.  And determining whether the statutes even apply in this case is a procedural issue: did SecAF violate procedure when he failed to consider section 638a and 691 when narrowing the continuation eligibility?

Finally, the Court notes that its task is to review the decision and rationale of the AFBCMR, not to make its own decision on these points.  It reviews the AFBCMR's decision under the arbitrary, capricious, contrary to law, or unsupported by substantial evidence standard.

Therefore, Defendant's motion to dismiss the case as nonjusticiable is **DENIED** except as to point one above, that is, the "Reasonableness of SecAF's Decision to Reduce the Force."

2. *Exhaustion*

Also in its motion to dismiss, Defendant contends that Perron and Shaffer failed to exhaust their administrative remedies under both AFI 36-2501 and Senior Judge Bruggink's Order.  Defendant highlights that AFI 36-2501 requires officers to "ordinarily" apply for special board consideration with the AFBCMR "within three years after he/she discovered, or with due diligence should have discovered, the asserted defect in the original board," unless it is in the interest of justice to excuse a late application.  And because the AFBCMR found the request to be untimely, they then failed to exhaust administrative remedies and are precluded from seeking judicial review.

In their complaints, both Perron and Shaffer concede that they did not initially petition the AFBCMR for a special board because the AFBCMR "denied all other similarly-situated plaintiffs who did appeal their involuntary separations."  Perron Compl. No. 16-60C, ¶ 53; Shaffer Compl. No. 16-392C, ¶ 53.  However, they now argue that they satisfied the exhaustion requirement because they petitioned the AFBCMR to convene a special board in December 2016 and received a decision denying them relief in August 2017.  Put in another way, even though the AFBCMR found the petitions untimely, because it denied them the relief they sought on the merits, they exhausted their administrative remedies and are eligible for judicial review in this Court.

In its August 2017 decision, the AFBCMR denied the special board petition on the merits because it found that there was "no error or injustice" in their non-retention

and merely "repeated the arguments of [their] co-plaintiffs[.]"  DA107.  The AFBCMR also found that the requests in December 2016 were made outside the three year limit in AFI 36-2501 and outside Senior Judge Bruggink's thirty day window.  DA108, 115. Moreover, the AFBCMR found "no indication that it would be in the interest of justice to excuse" the failure to submit the application in a timely manner as they did not offer any plausible reason for such delay.  DA102.  As such, the AFBCMR rejected the application. DA108.

In the context of section 1558, judicial review can be sought "only after a special board has considered the plaintiff's claim or, in the alternative, the Secretary has denied the plaintiff consideration of his claim by a special board."  *Byrum v. Winter*, 783 F. Supp. 2d 117, 123 (D.D.C. 2011).

Here, Plaintiffs exhausted their administrative remedies.  It makes no difference that the AFBCMR found dual grounds for denial.  The AFBCMR reached the merits of the case and denied Perron and Shaffer relief.  The practical effect of the AFBCMR's decision to reach the merits indicates that the exhaustion requirement is satisfied.

Perron and Shaffer petitioned the AFBCMR for a special board and were denied one based on the merits of their arguments.  This is what the statute requires.  As such, Perron and Shaffer exhausted their administrative remedies and can seek judicial review.

For all the reasons discussed above, the Defendant's motion to dismiss Perron and Shaffer's claims for failure to exhaust their administrative remedies is **DENIED**.

### E.  Motion for Judgment on the Administrative Record

The Court now brings its attention to the motions for judgment on the administrative record.  Plaintiffs contend that the AFBCMR's decisions are arbitrary, capricious, contrary to law, or unsupported by substantial evidence and ask this Court to either grant them judgment on the administrative record or remand the case back to the AFBCMR for consideration by a special board.  Pls.' Mot. at 35.

Specifically, Plaintiffs contend that the decisions were arbitrary because (1) SecAF did not comply with DoDI 1320.08 when he changed the continuation criteria, (2) the AFBCMR had an incorrect understanding of the selective continuation process, (3) SecAF did not have the authority to alter the continuation timeframe, (4) the AFBCMR deemed 10 U.S.C. § 638a irrelevant, and (5) the AFBCMR found 10 U.S.C. § 691 irrelevant.

### 1.  Changing Continuation Criteria Pursuant to DoDI 1320.08

Plaintiffs argue that SecAF explicitly violated DoDI 1320.08 by exceeding his authority when he issued his memorandum narrowing continuation eligibility from six years to five years within retirement.

The March 14, 2007 version of section 1320.08, ¶ 6.3 states in relevant part:

13

A commissioned officer on the Active Duty List in the grade of O-4 who is subject to discharge according to section 632 of Reference (d) *shall normally* be selected for continuation if the officer will qualify for retirement according to section 3911, 6323, or 8911 of Reference (d) within 6 years of the date of continuation.  The Secretary of the Military Department concerned may, *in unusual circumstances* such as when an officer's official personnel record contains derogatory information, discharge an officer involuntarily in accordance with section 632 of Reference (d).  When the Secretary of the Military Department concerned intends not to continue larger pools of officers in the grade of O-4 who would qualify for retirement within 6 years of the date of a continuation the Secretary shall notify the USD(P&.R) of the proposed course of action.

DoDI 1320.08, ¶ 6.3 (The Court has emphasized the terms that are in contention).

Specifically, Plaintiffs argue: (1) SecAF did not possess the discretion to alter the continuation requirements for twice-passed-over majors, (2) no unusual circumstances existed to trigger the discretion to alter the eligibility to retirement criteria, and (3) SecAF did not undergo a required policy recommendation approval process.

### a.   SecAF Discretion

Regarding whether the SecAF had the discretion to alter the continuation requirements, Plaintiffs present three further arguments.

First, Plaintiffs seize upon a difference in prepositions between the Instruction and the AFBCMR's opinion.  Section 1320.08 uses the phrase "in unusual circumstances," while the opinion uses the phrase "under unusual circumstances."[9]  The significance of this distinction is not readily apparent, and the only explanation that the Court can find is the following:

[T]he SecAF does not have the authority to change the DODI in "unusual circumstances."  The Instruction only permits the SecAF to not continue an O-4 under "unusual circumstances."  The exception does not provide the SecAF authority to change the DODI language and categorically deny continuation to majors within six (6) years of retirement, but not five (5) years for no properly articulated unusual reason.

---

[9] The AFBCMR stated, "We note the argument of counsel that the intent of Congress in passing the D[efense] O[fficer] P[ersonnel] M[anagement] A[ct] was that officers attaining the permanent grade of O-4 be continued to 20 years of service . . . we also note that Congress anticipated that *under unusual circumstances* this may not be possible."  AR015 (emphasis added).

Pls.' Resp. at 19.

> Defendant interprets Plaintiffs' argument this way:
>
> Plaintiffs appear to argue that the preposition "under," instead of "in," requires that the Secretary find unusual circumstances to be personal to the service member and not "categorically" for a set of majors.

Def.'s Reply at 7.

This is as good an interpretation as any, given Plaintiffs' lack of a clear explanation of the significance of the distinction between "in" and "under." Therefore, the Court adopts the interpretation of the Defendant and directs the reader to the discussion of the third argument below.

Second, Plaintiffs contend that the use of the word "shall" in the instruction makes continuation mandatory. *See* Pls.' Resp. at 19[10] ("There can be no question that the language of DoDI 1320.08 *mandates* that O-4's within six (6) years of retirement eligibility be continued to that retirement.") (emphasis added).

Third, Plaintiffs argue that the example of derogatory information contained in the second sentence of the instruction indicates that the SecAF's discretion to deny continuation is limited to reasons more personal in nature; that is, the continuation decision is "service member focused" and cannot be used categorically. Plaintiffs note that none of these officers had any derogatory information in their records.

Regarding Plaintiffs' second argument, Defendant asserts that continuation is not mandatory. Defendant explains that as Plaintiffs' separation arises out of being twice-passed-over for a promotion, their continuation is in the sole discretion of the appropriate Service Secretary. Def.'s Reply at 7. More precisely, because these majors were twice passed over and had less than eighteen years for statutory continuation (per 10 U.S.C. §§ 632(a)(3)), their continuation decision was placed in the hands of the appropriate Service Secretary by Congress and was not required.

Defendant also argues that the Plaintiffs, in asserting that continuation is mandatory because of the use of the word "shall," misunderstand DoDI 1320.08, because they continue to overlook the entire phrase "shall normally" in the Instruction.

---

[10]Defendant questioned whether Plaintiffs conceded this argument when they stated that Congress', "intent was incorporated in DoDI 1320.08 by prescribing that *majors within six years of retirement shall normally be continued except in unusual circumstances*." Pls.' Resp. at 18-19. But, in the very next paragraph of Plaintiffs' reply, they directly contradict this statement when they state that "there can be no question" that the Instruction mandates continuation when majors are within 6 years of retirement. Pls.' Resp. at 19.

According to Defendant, the use of the phrase "shall normally" in the Instruction sets the norm, but specifically allows for deviation "in unusual circumstances." DoDI 1320.08, ¶ 6.3.

Lastly, Defendant addresses Plaintiffs' third (and first) argument by pointing out that there is nothing in the Instruction that limits the unusual circumstances exception to the personal circumstances of the officer (such as derogatory information), as opposed to unusual circumstances that are categorical. Def.'s Reply at 8. Defendant explains that even though the example in the instruction is personal in nature, "it is just an example, and nothing in the instruction precludes the Secretary from identifying unusual circumstances that impacted the Air Force as a whole." Def.'s Reply at 8. To the contrary, Defendant points out that the only limitation in the instruction was for SecAF to send notice to USD(P&R) of his intent to limit continuation.

As the AFBCMR stated:

> In making his argument that the SecAF violated DoDI 1320.08, counsel first interprets the provision as if the word "normally" was not there. The directive to continue officers within 6 years of retirement was not an absolute requirement; "normally" means just what it says; i.e., a usual or typical action. Deviation is authorized in "unusual circumstances." Basing a discharge decision on derogatory information in the officer's record is listed as an example of an unusual circumstance; it is not the sole basis for doing so . . . Were "derogatory information" in the record the only basis to digress from the normal rule, the last sentence of the provision would be unnecessary.

AR008.

This Court agrees with the AFBCMR. First, the Instruction's directive to continue officers within 6 years of retirement is not unqualified. The use of the phrase "shall normally" does not mandate an action but merely establishes the norm. This "norm" can then be altered in "unusual circumstances." Thus, it was reasonable for the AFBCMR to conclude that the Instruction gave the SecAF discretion not to continue officers within 6 years of retirement.

Also, there is nothing in the Instruction that restricts the finding of "unusual circumstances" to those personal in nature. The AFBCMR is quite persuasive when it references the Instruction language requiring SecAF to notify USD(P&R) of his intent not to continue "larger pools." If the Instruction were to limit the unusual circumstances exception to only derogatory information or other personal information, it would not have used the language regarding not continuing "larger pools," which implies that there could be some other categorical basis for denying the continuation.

Therefore, the Court finds that SecAF did possess the discretion not to continue a major.  As such, the AFBCMR's decision is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### b.   Unusual Circumstances

Having concluded that the SecAF had the discretion to alter the continuation requirements, the Court now turns its attention to Plaintiffs' argument that no "unusual circumstances" existed to trigger the exception.  Pls.' Resp. at 19.  Plaintiffs attempt to define "unusual circumstances" as requiring an "external stimulus," and not merely one of its own creation.  Pls.' Mot. at 20.  Plaintiffs also argue that the plain meaning of "unusual circumstances" cannot include the need to reduce manpower because such activity is "routine."  Pls.' Mot. at 21-22.  Likewise, Plaintiffs continue to allege that the Air Force was well within its end-strength goal and there was no "unusual circumstance" triggering the need to reduce the force.  Pls.' Mot. at 21.  In addition, Plaintiffs assert that no requirement existed for SecAF to meet congressionally mandated end-strength levels which precludes the existence of "unusual circumstances" based on excessive manpower. Pls.' Mot. at 29.

First, Defendant maintains that an unusual circumstance did exist: the need to reduce the manpower while maintaining an appropriate mix of airmen.  Def.'s Mot. at 28. Second, Defendant disputes Plaintiffs' contention that the Air Force was well within its end-strength goal, since its manpower exceeded end-strength by 1,570 airmen.  AR119 (end-strength for 2011 is 332,200 while actual manpower in 2011 was 333,370).  Third, Defendant alleges that it is irrelevant if SecAF had a requirement to meet end-strength levels because he has the wide discretion to manage the airpower, including the decision to reduce it.

As it pertains to the existence of an "unusual circumstance," the AFBCMR found that:

> The applicant next argues that force management actions cannot constitute "unusual circumstances," as these types of actions are carried out routinely by the Air Force.  While the Air Force and the other services have had to use various force management tools to help attain Congressionally mandated end strength numbers, *the requirement to add to the normal force management mix a change in the retirement window for twice non-selected majors to be selectively continued does represent an unusual circumstance indicative of the more drastic measures required at that time*.  The SecAF acted with full authority, and his actions were in no way arbitrary.

AR009 (emphasis supplied).

The AFBCMR explained that reducing manpower while also maintaining an appropriate mix of airmen was an "unusual circumstance."  The AFBCMR even took it

one step further and categorized the situation as "drastic," especially in light of the "various force management tools," the Air Force has at its disposal.

The AFBCMR has deployed convincing arguments why the manpower reduction was an unusual circumstance.  Therefore, the Court holds that the AFBCMR's decision is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence standard because there was an unusual circumstance that triggered SecAF's authority.

### c.  Policy Argument

Plaintiffs next contend that under section 1320.08, ¶ 5.2.5, SecAF can only "**recommend** policy changes."  Pls.' Mot. at 17 (bold in original).  *See* DoDI 1320.08, ¶ 5.2.5 (SecAF "shall . . . [r]ecommend policy changes to the USD(P&R).").  They further allege that a "mere notification to USD(P&R) does not constitute approval."  Pls.' Mot. at 18.  They explain that "such notification and following actions **must** abide by **approved** policy."  Pls.' Mot. at 18 (bold in original).  Since the approved policy was continuation of officers within six years of retirement, SecAF's memorandum narrowing the criteria was contrary to past practice, factually incorrect, misleading, and violative of DoDI 1320.08.

Defendant claims that the policy recommendation section of DoDI 1320.08, ¶ 5.2.5, does not demonstrate error on the part of SecAF.  Defendant argues that there is no need to approve policy recommendations, but instead, the only requirement is that the Secretary "shall notify the USD(P&R)" of his intent to non-continue larger pools of officers.  Defendant points out that in the Plaintiffs' complaint, they concede that SecAF provided notice to USD (P&R) in order to "manage [the] officer corps and bring [them] within Congressionally mandated end-strength" and intended "to exercise [his] authority contained in DoDI 1320.08, para 6.3, not to selectively continue large pools of twice-deferred officers in the grades of O-3 and O-4 who would otherwise qualify for retirement within 6 years of the date of a continuation."  *See* Compl. at ¶ 19 (quoting AR066).

The AFBCMR addressed Plaintiffs' policy-driven argument:

> As for the [policy] argument, counsel states that the SecAF failed to obtain permission in writing from USD (P&R) to change the established policy "as required."  As we noted in our original advisory, the governing DoDI did **not** require written permission or permission at all.  The requirement was to **notify** the USD (P&R) of the proposed course of action . . . .

AR015 (bold in original).

SecAF acted pursuant to DoDI 1320.08.  As the AFBCMR stated, the plain language of the law indicates that SecAF is only required to notify USD(P&R) of his intention not to continue officers, not seek permission to do so.  This is an instance where the word "shall" does mandate an action.  As acknowledged by Plaintiffs, on December

6, 2010, SecAF sent notice to USD(P&R) of his intention not to continue officers. AR066.

Further, SecAF was not required to seek approval for the recommended policy change under DoDI 1320.08, ¶ 5.2.5. Paragraph 5.2.5 is the general provision for recommending policy changes. However, DoDI 1320.08, ¶ 6.3 confers on the Secretaries of the Military Departments the authority not to continue officers in unusual circumstances. Having met the requirement of unusual circumstances, the SecAF is only required by this paragraph to notify USD(P&R) of his intent not to continue officers. Thus, the SecAF acted in accordance with the policy proclaimed in DoDI 1320.08.

Because SecAF only needed to notify USD(P&R) of his intention not to continue O-4 majors, and did so, the Court holds that the AFBCMR's decision finding this is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### 2. Selective Continuation Process

Next, Plaintiffs contend that the AFBCMR's decision is based on an incorrect understanding of the selective continuation process. Plaintiffs do not point to anything in the AFBCMR's decision on remand that indicates where the AFBCMR reviewed the continuation process and how it misunderstood it.[11] From the briefing it appears that the Plaintiffs suspect that the AFBCMR misunderstood the process because the instructions that the SecAF gave to the selection board were flawed.

Basically, Plaintiffs argue that the members of the Selective Continuation Board were not properly instructed to use the best qualified method in deciding which officers should be continued in service.[12] It is not disputed that the method described in AFI 36-2501 is the "best qualified method." The members of the Promotion Board and the members of the Selective Continuation Board were instructed by SecAF by a Memorandum of Instruction (MOI) and its Addenda. Plaintiffs argue that the Promotion Board was instructed to use the best qualified method whereas the Selective Continuation Board was not.

AFI 36-2501 ¶ 2.18.1 requires certain promotion boards to use a 6-10 scoring system. Paragraph 2.35 allows selective continuation boards to use the best qualified method "[i]f the continuation opportunity is less than 100%," as it is in this case. AFI 36-2501 ¶ 2.35.3.

---

[11] The only reference that the Court could find that would be relevant to this argument states: "The continuation board is a competitive process… The board determined that the selected officers were fully qualified to meet the needs of the Air Force." AR231.

[12] Initially, Plaintiffs argued that the AFBCMR misunderstood the continuation process as a competitive one, but later they admitted that AFI 36-2501 permitted a competition in the continuation process. Pls.' Resp. at 33.

The SecAF's MOI in general is addressed to both the Promotion and the Selective
Continuation Boards: "I am convening *these* selection boards . . . ."  AR093.
Furthermore, the Addendum to the MOI states: "*These* boards are being convened under
[*inter alia*] AF Instruction 36-2501."  AR094.

Addressing both Boards, the MOI charges the members: "Your task is to
recommend the best-qualified officers for promotion . . . ." and "[y]ou must act in the
best interests of the Air Force . . . ."  AR093.

The Selective Continuation Board is addressed in particular in the Addendum:

As there is no quota applied, you may select up to 100% of
eligible, qualified officers, but you must consider the following guidance:

. . . Officers not within five years of retirement may be
recommended for continuation, but only if you determine that continuation
is clearly in the best interest of the Air Force.

It will normally be in the best interest of the Air Force to continue
officers with critical skills. [A list of which skills are critical as determined
by the SecAF follows.]

However, as we are in a period of force reductions you normally
should not continue an officer with negative quality indicators
documented in his or her record, or who will not qualify for retirement
within five years of [the convening date of the board], or who does not
have a critical skill described above, unless it is clearly in the best interests
of the Air Force to do so.

AR097.

The Court notes that Plaintiffs are correct insofar as they argue that the MOI did
not expressly require that the Selective Continuation Board use the best-qualified method
in AFI 36-2501 ¶ 2.18.1.  But the Administrative Record indicates not only that the board
president "read the MOI verbatim to the board members" but also that the Selective
Continuaiton Board was "briefed on the pertinent provisions of [*inter alia*] AF Instruction
36-2501."  AR054.  Indeed, Plaintiffs admit that the Selective Continuation Board was
briefed on AFI 36-2501, but they still question "which sections" of the Instruction were
briefed to the board.  Pls.' Resp. at 33.

The reference to "best qualified" in the MOI addressed to both Boards combined
with the undisputed fact that the Selective Continuation Board was briefed on AFI 36-
2501 indicates to the Court that the AFBCMR did not misunderstand the selection
process.  Nothing in the administrative record indicates that the pertinent provisions on
the best-qualified method were excluded in the AFI 36-2501 briefing or were ignored.

In addition to the argument that the AFBCMR misunderstood the selection process, Plaintiffs argue that they were judged solely on the basis that they were outside the new 5-year retirement window and that they were not judged on "merit."  Pls.' Resp. at 34.

The MOI, as quoted above, clearly provides for a decision to continue an officer outside the 5-year window, if to do so would be in the "best interest of the Air Force." AR097.  This phrase is then qualified: "It will normally be in the best interest of the Air Force to continue officers with critical skills."  AR097.  Finally, the MOI stated:

> However, as we are in a period of force reductions you normally should not continue an officer with negative quality indicators documented in his or her record, or who will not qualify for retirement within five years of [the convening date of the board], or who does not have a critical skill described above, unless it is clearly in the best interests of the Air Force to do so.

AR097.

The MOI, therefore, allows the Selective Continuation Board to continue officers outside the 5-year window, as long as they do not have documented negative quality indicators, they have critical skills, and the Selective Continuation Board provided that it is in the best interests of the Air Force to do so.  Indeed, the use of the word, "normally," indicates to the Court that the Selective Continuation Board could continue an officer outside the 5-year window even if he or she did not meet the particular conditions of the paragraph quoted immediately above, provided that the continuation would be in the best interests of the Air Force.

There is nothing in the Administrative Record to suggest that the MOI instructions were not carried out or that the AFBCMR was unaware of these parameters when it reviewed the decision of the Selective Continuation Board.  Therefore, the officers were not judged undeserving of continuation solely on the basis that they were outside the 5-year window.  Finally, since these officers were judged on stated, rational criteria, they were judged on the "merits."  The AFBCMR acted appropriately.

### 3.   Continuation Timeframe

Plaintiffs next argue that the AFBCMR erroneously determined that SecAF had the authority to alter the continuation date violating AFI 36-2501, ¶ 7.11.3 and DoDI 1320.08.  They contend that AFI 36-2501, ¶ 7.11.3 requires continuation to begin on the "1st day of the 7th month from the approval of the board results."[13]  Pls.'s Resp. at 29.  And because SecAF did not use this date, he violated this provision.  Plaintiffs also allege that SecAF violated these provisions when he failed to disclose in his notice to

---

[13] This date is the norm because without continuation, that is the date the officer would otherwise be discharged.  AR005.

USD(P&R) his intent to alter the continuation date when he was required to do so.  Pls.'s Resp. at 29.

Plaintiffs are not persuasive.  AFI 36-2501, ¶ 7.11.3 states that: "[n]ormally, the continuation period begins on the first day of the seventh month from the approval of the board results."  Plaintiffs, again, interpret the provision as if the word "normally" was not there.  As such, this provision only establishes the norm.  SecAF had the inherent authority to deviate from this date.  Additionally, the statute did not require SecAF to notify USD(P&R) of his intent to alter the continuation date.  Under the statute, SecAF was only required to inform USD(P&R) of his intent to narrow the continuation pool.

Because SecAF had the authority to alter the continuation date, the Court holds that the AFBCMR's decision is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### 4.  Relevance of 10 U.S.C. § 638a

Plaintiffs argue here that the AFBCMR erroneously determined that the numeric limitations set forth in 10 U.S.C. § 638a[14] do not apply to selective continuation boards.  Plaintiffs claim that paragraph 4.8 of DoDI 1320.11 required consideration of section 638a.  Pls.' Mot. at 10.  This paragraph states:

> Reference (b) does not preclude the Secretary of the Military Department concerned from convening a board under an authority other than reference (b) to consider officers for other selection processes, such as Regular appointment or continuation on active duty or in an active status, for reasons similar to those in reference (b).  Such boards may not be convened for recommending an officer for *early retirement or removal* if the decision of the board may conflict with the limitations of sections 638, 638a, 14704, or 14705 of reference (b).

DA118 (emphasis added).  Reference (b) is a collection of statutes, including 10 U.S.C. § 638a.  DA116.  Plaintiffs interpret this language to require that "*any board* convened to remove an officer must comport with the [numeric] limitations," in section 638a.  Pls.' Mot. at 11.  In other words, Plaintiffs argue that section 638a is relevant and the Selective Continuation Board's failure to consider its numeric limitations was improper.

---

[14] In 2011, section 638a(d)(3) stated: "The total number of officers described in subsection (b)(4) from any of the armed forces (or any of the armed forces in a particular grade) who may be recommended during a fiscal year for discharge by a selection board convened pursuant to the authority of that subsection may not exceed 70 percent of the decrease, as compared to the preceding fiscal year, in the number of officers of that armed force (or the number of officers of that armed force in that grade) authorized to be serving on active duty as of the need of that fiscal year."  10 U.S.C. § 638a(d)(3) (2011).  This subsection was removed from the statute in 2014.  *See* 10 U.S.C. § 638(d)(3) (2015).

In contrast, Defendant maintains that section 638a's numeric limitation applies only to "boards convened for the purposes of 'early retirement or removal;'" otherwise known as force shaping boards, and Plaintiffs here did not receive "early retirement or removal," but rather faced a "terminal point due to being twice passed-over" and then nonselected for continuation leading to separation.[15]  Def.'s Reply at 17 (quoting DA118).  Stated another way, Defendant claims that the statute and department instruction they allege were violated apply to "a completely separate statutory scheme and separation authority utilized to non-continue plaintiffs."  Def.'s Reply at 18.

In his opinion, SecAF found that section 638a was inapplicable to the case. Specifically, he explained that Plaintiffs were not removed from service pursuant to a board convened under section 638a, but rather removed pursuant to a board convened under 10 U.S.C. § 637:

> Selective Continuation Boards are convened under Title 10 USC 637. They are boards to retain members who have been twice nonselected for promotion on active duty based on the needs of the Service until they are retirement eligible.  They are not convened under Title 10 USC 638a and they are not early discharge boards.  The rules contained in Title 10 USC 638a are not relevant.

AR006.  The opinion continued to explain that "[t]he selective continuation process is not a force shaping board, *but a byproduct of nonselection* for the second time that can result in separation from the Air Force."  *Id.* (emphasis added).  In the AFBCMR's January 2015 decision, it adopted SecAF's reasoning "as the primary basis for [its] conclusion."

SecAF, AFBCMR, and Defendant are correct.  Even though there is no doubt that the Plaintiffs in this case were removed from the Air Force, they were not removed in a way that would have brought them within the scope of section 638a limitations.  As Defendant clearly explained, force shaping boards are initiated during a reduction in force for "early retirement or removal" and terminates members prior to the expiration of their terms of service.  Def.'s Mot. at 38.  These are the boards subject to section 638a. Meanwhile, selective continuation boards are held to continue or non-continue officers that reached a terminal point due to being twice-passed-over for a promotion and are only subject to section 637.

This is clear in light of DoDI 1320.11 which limits the section 638a application to boards convened for "early retirement or removal."  Selective continuation boards are not boards convened for "early retirement or removal."

---

[15] Defendant also maintains that Plaintiffs misunderstand the record when they attempt to apply section 638a.  However, because the Court holds that section 638a is irrelevant to the dispute, a substantive discussion of this point is moot.

Accordingly, the Court holds that the AFBCMR's finding that 10 U.S.C. § 638a was irrelevant is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### 5.  Relevance of 10 U.S.C. § 691

Plaintiffs next contend that the AFBCMR erred when denying their argument that SecAF violated 10 U.S.C. § 691 by utilizing appropriated funds to reduce manpower below end-strength levels in fiscal year 2012.  Pls.' Mot. at 31.  Section 691(d) states:

> No funds appropriated to the Department of Defense may be used to implement a reduction of the active duty end strength for any of the armed forces (other than the Coast Guard) for any fiscal year below the level specified in subsection (b) unless the reduction in end strength for that armed force for that fiscal year is specifically authorized by law.

10 U.S.C. § 691(d).  Plaintiffs' claim that SecAF violated this provision because the "reduction in force efforts resulted in Air Force strength falling below the minimum end strength specified in 10 U.S.C. § 691(b) in F[iscal] Y[ear] 2012, required the use of appropriated funds (which had not been appropriated yet), and was not specifically authorized by law."  Pls.' Mot. at 13.

Plaintiffs focus on fiscal year 2012, and not the year they were separated—2011—because "it was clear that the effect of this reduction would not impact the FY 2011 number (and it did not), but it would impact the FY 2012 numbers."  Pls.' Resp. at 16.  Plaintiffs also focus on fiscal year 2012 because the separation was "required by law to not take effect until the first day of the seventh calendar month in which the President approves the report of the board."  Pls.' Resp. at 16.  *See* 10 U.S.C. § 632(a)(1).

Plaintiffs highlight that the AFBCMR conceded that the Selective Continuation Board was used as a tool for reducing the force and argued that this concession makes section 691 applicable.  *See* AR231 ("As noted in our previous decision, the Air Force was required to make a reduction in their officer force, and although it was unfortunate, it was necessary in order to meet congressionally mandated end strength numbers.").  Lastly, in a footnote, Plaintiffs allege that SecAF violated the Anti-Deficiency Act ("ADA"), 31 U.S.C § 1341(a)(1)(B).  *See* Pls.' Mot. at 14.

Defendant, however, explains that there could be no violation of section 691(d) because at the time the decision was made to discontinue Plaintiffs in 2011, the end-strength was above congressionally authorized levels.  Defendant also claims that Plaintiffs' reliance on the 2012 fiscal year is misguided.  Defendant explains that the Plaintiffs misunderstand the timing requirement in section 632(a)(1).  Defendant continues that section 632(a)(1) sets the maximum, not minimum, time for retention after a non-continuation decision.  *See* 10 U.S.C. § 632(a)(1) ("[the] *date shall be not later* than the first day of the seventh calendar month beginning after the month in which the President approves the report of the board.") (emphasis added).  So even though Plaintiffs were retained until fiscal year 2012, the decision to separate them was made final in 2011

24

because the six month relief was discretionary, and not mandatory, under section 632(a)(1).

Defendant further maintains, to the extent that the 2012 fiscal year numbers are relevant, Plaintiffs failed to demonstrate to the AFBCMR that the actual manpower fell below the end-strength level that year. Plaintiffs concede that the authorized end-strength for the Air Force actually increased, and Defendant highlights that they failed to identify any short-fall of officers during that time. Pls.' Mot. at 13. Moreover, Defendant contends that Plaintiffs' argument is belied by the fact that the administrative record, in a document supplied by Plaintiffs' counsel, demonstrates that the end-strength in fiscal year 2012 was above congressionally authorized levels by 159. AR257.

Finally, Defendant clarifies that even though the AFBCMR conceded that the Selective Continuation Board was used to reduce the force, it was used to reduce officer strength, and not, total authorized end-strength.[16] Put simply, section 691(d) restricts a reduction in overall end-strength, not officer levels. Defendant also concludes that the allegations regarding the ADA are without jurisdiction, because the statute is not money mandating.

In his opinion, SecAF explained that there could be no violation of section 691(d) because the decisions to non-continue the plaintiffs occurred in fiscal year 2011, and the manpower was above end-strength levels for that year. *See* AR006 n.2 (explaining that "the congressionally mandated end strength numbers for . . . FY11 were 332,200" and "the actual inventory . . . was 333,370."). *See also* AR004 (explaining that the decision to separate Plaintiffs from service was based upon fiscal year 2011 end-strength numbers). SecAF also denied their argument because, even if he was to use the numbers provided by Plaintiffs, they were still above authorized end-strength. AR006 n.2.

The Court notes first that since the separation decision was made in contemplation of the 2011 fiscal year numbers, the 2012 fiscal year numbers are irrelevant. Plaintiffs' argument is equally unpersuasive because the statute gives SecAF the discretion to extend the time of service for a "date . . . not later than the first day of the seventh calendar month beginning after the month in which the President approves the report of the board." Therefore, given this discretion, the separation was made in fiscal year 2011, not 2012.

Second, the Plaintiffs failed to show, and the evidence demonstrates otherwise, that the end-strength was ever below congressionally authorized levels. *See* AR006 n.2

---

[16] End-strength is defined as "the maximum number of personnel each of the military services is authorized to have on the last day of the fiscal year." Cong. Budget Office, *Estimated Cost of the Administration's Proposal to Increase the Army's and the Marine Corps's Personnel Levels*, at 1 n.1 (2007), available at www.cbo.gov. Officer levels is a component of end-strength. *See* AR257 (listing officers as part of end-strength along with enlisted members and cadets).

(explaining that "the congressionally mandated end strength numbers for . . . FY11 were 332,200" and "the actual inventory . . . was 333,370.").

Third, Plaintiffs' arguments are directly contradicted by some of their own evidence.  For example, their attempts to distinguish the fiscal year 2012 numbers are contrary to their own documents showing the end-strength above authorized levels by 159.

Fourth, AFBCMR's concession that this procedure was used to reduce officer strength does not implicate section 691.  As Defendant explains, officer strength and end-strength are different variables.  As referenced *supra*, officer strength is a component of end-strength.  The statute negates the use of funding in end-strength reductions, but makes no mention of officer strength reductions.  It is mathematically possible, as it was in this case, for officer strength to be reduced without going below the congressionally authorized end-strength levels.

Lastly, the allegations regarding the ADA are not money mandating and are without jurisdiction in this Court.  The ADA, in relevant part, states that:

> An officer or employee of the United States Government or of the District of Columbia government may not . . . involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law . . . .

31 U.S.C. § 1341(a)(1)(B).  The ADA prohibits procurement agencies and employees from "entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation."  *Hercules Inc. v. United States*, 516 U.S. 417, 427 (1996).  It does not, however, provide grounds for jurisdiction under the Tucker Act.  *See L-3 Servs. v. United States*, 104 Fed. Cl. 30, 35 (2012) ("The ADA cannot be characterized as money-mandating.").  Moreover, the ADA claim is not alleged in the complaint.

Therefore, the Court holds that the AFBCMR's finding that 10 U.S.C. § 691 was irrelevant is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

Additionally, to the extent that the Plaintiffs' claim a violation of the ADA, it is **DISMISSED** for lack of jurisdiction.

**IV.      Conclusion**

For the foregoing reasons, the Court hereby:

1.  **DENIES** Defendant's motion to dismiss for lack of jurisdiction as Plainitffs' claims fall within the purview of the Military Pay Act;

2.  **DENIES** Defendant's motion to dismiss for failure to state a claim because Plaintiffs' claims are in fact justiciable, except as to the "Reasonableness of SecAF's Decision to Reduce the Force;"

3.  **DENIES** Defendant's motion to dismiss Perron and Shaffer's claims for failure to exhaust their administrative remedies;

4.  **DENIES** Plaintiffs' motion for judgment on the administrative record;

5.  **DISMISSES** Plaintiffs' Anti-Deficiency Act claim for lack of jurisdiction; and

6.  **GRANTS** Defendant's motion for judgment on the administrative record.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge